UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____
                                        )
CASHMAN DREDGING AND MARINE             )
CONTRACTING CO., LLC,                   )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )          Civil Action No. 21-11398-DJC
                                        )
FRANK BELESIMO and CALLAN               )
MARINE, LTD,                            )
                                        )
        Defendants.                     )
_____)


REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR CONTEMPT, TO
COMPEL COMPLIANCE WITH COURT ORDER, AND FOR SANCTIONS
[Docket No. 34]

May 17, 2022

Boal, M.J.

        This case involves, inter alia, allegations of theft of trade secrets, breach of fiduciary

duty, and interference with contractual and business relations.  See Docket No. 1.  Plaintiff

Cashman Dredging and Marine Contracting Co., LLC ("CDMC") has moved for an order of

contempt against defendants Frank Belesimo and Callan Marine, LTD, to compel their

compliance with a court order, and for sanctions.[1]  See Docket No. 34.  For the following

reasons, I recommend that Judge Casper deny most of the plaintiff's motion, and I reserve

decision with respect to the outstanding discovery issues.

I.      BACKGROUND

        CDMC provides dredging and marine contracting services to areas on the East and Gulf

_____
[1] Judge Casper referred the instant motion to the undersigned on February 1, 2022.  Docket No.
42.  She referred disputes regarding the parties' joint discovery protocol to the undersigned on
May 20, 2022.  Docket Nos. 60, 61.

Coasts and in the Caribbean Basin.  Docket No. 1 ¶ 7.  As part of its business, CDMC prepares and submits bids for various dredging projects.  Id. ¶ 8.  These bids, CDMC asserts, use confidential proprietary information including equipment operating costs, dredge production rates, and historical company performance data.  Id.  CDMC takes a variety of precautionary steps to ensure its information will not be disclosed to any unauthorized third parties.  Id. ¶ 9.

In May 2007, CDMC hired defendant Frank Belesimo as Vice President, and, in or around 2010, promoted him to the position of Executive Vice President.  Id. ¶ 10.  In these roles, Belesimo was responsible for, inter alia, creating bid estimates and managing and engineering projects.  Id. ¶ 11.  He also worked as a co-inventor with CDMC's founder on certain patent applications relating to dredges.  Id.  As a high-level member of CDMC, Belesimo had access to confidential documents and information.  Id. ¶¶ 21, 24.

Belesimo was unhappy with CDMC's decision not to promote him to the position of Chief Operating Officer in December 2019.  Id. ¶ 12.  To address this issue, CDMC placed Belesimo on a large project to develop and construct a new hopper dredge.  Id.  Belesimo worked on the project, but ultimately decided to leave CDMC in July 2021 to work for defendant Callan Marine, LTD.  Id. ¶¶ 16, 19, 28.  CDMC contends that Callan is a direct competitor in both the Gulf Coast and Caribbean Basin.  Id. ¶ 57.

When Belesimo announced his resignation in July 2021, he was reminded of his obligation to maintain the confidentiality of CDMC information.  Id. ¶¶ 28-32.  CDMC asserts that despite numerous admonitions, Belesimo nevertheless intentionally took CDMC's confidential proprietary information.  See, e.g., id. ¶¶ 38, 40, 44-46, 50-52.  Such information included bid estimation data, vessel schematics, historical project performance data, dredge production rates, and operating costs.  See id.  CDMC further asserts that Callan benefited from Belesimo's theft of trade secrets.  Id. ¶ 60.

On August 25, 2021, CDMC filed the instant suit against Belesimo and Callan.  Docket No. 1.  On September 29, 2021, the parties jointly submitted a stipulation and proposed order regarding preliminary injunctive relief, which Judge Casper endorsed on October 1, 2021.  Docket Nos. 16, 17.  The order laid out a process to facilitate the return of "CDMC's trade secrets and intellectual property."  Docket No. 17.

Due to disagreements between the parties, on December 17, 2021, CDMC filed the instant motion.  Docket No. 34.  Specifically, for noncompliance with Judge Casper's October 1, 2021 order, CDMC seeks a ruling holding the defendants in contempt of the order and compelling them to (1) submit "for direct search, collection, and examination all repositories capable of storing data"; (2) provide an index of Callan's network as well as a report and a certified inventory of its data storage devices; (3) provide an inventory of Belesimo's data storage devices; (4) make available for deposition representatives from two outside data management companies used by the defendants; (5) provide chain of custody affidavits relating to data collection done by the two outside data management companies; and (6) pay professional and attorneys' fees associated with the issues alleged in CDMC's motion.  Docket No. 34 at 2-3.

The defendants filed an opposition on January 7, 2022.  Docket No. 41.  Pursuant to this Court's February 3, 2022 order, CDMC filed a status report regarding the outstanding discovery issues on February 9, 2022.  Docket Nos. 43, 44.  This Court heard oral argument on March 9, 2022 and directed the parties to continue to address their discovery disputes and to file a status report, which they did, on March 23, 2022.  Docket Nos. 48, 51.  In that report, the parties outlined their positions on the remaining issues.  Docket No. 51.  On March 30, 2022, the parties filed a further status report.  Docket No. 52.

On March 23, 2022, the defendants moved to amend Judge Casper's October 1, 2021 order.  Docket No. 50.  On April 14, 2022, Judge Casper denied the motion and directed the

parties to confer and propose a joint protocol for completing the outstanding electronic discovery pursuant to the October 1, 2021 order.  Docket No. 57.  The parties were unable to resolve all of their disputes.  Docket No. 60.  Judge Casper subsequently referred those disputes to the undersigned.  Docket No. 61.

II.   DISCUSSION

A.   Magistrate Judge Contempt Authority

"Pursuant to 28 U.S.C. § 636(e)(6), a magistrate judge does not have authority to issue a civil contempt finding where the case is not before the magistrate judge by consent."  Navitag Techs., Inc. v. Silva, No. 1:11-CV-00386-JL, 2011 WL 3862168, at *2 (D.N.H. Aug. 5, 2011), report and recommendation adopted, No. 11-CV-386-JL, 2011 WL 3862154 (D.N.H. Aug. 31, 2011).  In such circumstances, a magistrate judge may only certify the facts to a district judge, see 28 U.S.C. § 636(e)(6)(B)(iii), which is often accomplished through a report and recommendation.  Kologik Cap., LLC v. In Force Tech., LLC, No. CV 18-11168-GAO, 2021 WL 2627799, at *4 (D. Mass. Apr. 20, 2021) (citing cases).

In particular, Section 636(e)(6)(B) "sets out a procedure that requires this court to certify facts that constitute a civil contempt and allows this court to issue an order that the putative contemnor appear before the district judge to show cause why he 'should not be adjudged in contempt.'"  Kologik, 2021 WL 2627799, at *4 (quoting 28 U.S.C. § 636(e)(6) (additional citations omitted)).  Pursuant to Section 636(e)(6)(B),

> the magistrate judge *shall* forthwith certify the facts to a district judge and *may* serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

4

Kologik, 2021 WL 2627799, at *4, n.4 (emphasis in original) (quoting 28 U.S.C. §

636(e)(6)(B)).  "It is then the province of the district judge to 'hear the evidence' and, if

warranted, make a finding of contempt and issue sanctions."  Kologik, 2021 WL 2627799, at *4

(quoting 28 U.S.C. § 636(e)(6)(B) (additional citations omitted)).

Accordingly, pursuant to 28 U.S.C. § 636(e)(6)(B), I certify the following facts:

1.      On September 29, 2021, the parties jointly filed a stipulation and proposed order

that resolved CDMC's motion for a preliminary injunction.  Docket No. 16.

2.      On October 1, 2021, Judge Casper endorsed that order.  Docket No. 17.

3.      The order provided that the defendants

must submit for examination to search for, collect, and preserve any and all
evidence of the existence, use accessing, examining, copying, modifying,
reproducing, republishing, distributing, transferring, communicating, divulging or
making accessible to anyone concerning the Trade Secrets all computers, hard
drives, devices, networks, media, files and/ or any other repository capable of
storing data to determine whether C[DM]C's Trade Secrets are currently or have
ever been stored, transported, or transferred thereon, whether owned, controlled, or
maintained by Belesimo and/or Callan, by an independent forensic examination
expert mutually selected by the Parties to be conducted pursuant to a written
protocol to be agreed upon by the Parties, with all costs to be shared by the Parties.

Id. ¶ 2.

4.      In addition, the defendants were ordered to "provide a detailed report and notice

of all computers, hard drives, devices, networks, media, files and/or any other repository capable

of storing data provided for inspection to Plaintiff and the independent forensic examination

expert . . . ."  Id.

5.      The defendants were also "enjoined from using, accessing, examining, copying,

modifying, reproducing, republishing, distributing, transferring, communicating, divulging or

making accessible to anyone outside of CDMC the Trade Secrets."  Id. ¶ 3.

6.      The parties agreed to use StoneTurn Group, LLP as a neutral third-party forensic

investigator to review data storage devices produced by the defendants.  See Docket No. 36-1.

7.     In connection with their collection and preservation efforts, the defendants hired two third-party technology companies, Paradigm Electronic Solutions, LLC and PW Technologies, Inc.  Docket No. 41 at 3.

8.     On October 9 and 10, 2021, defendants' counsel, with help from Paradigm, made forensic images of the devices in Belesimo's possession.  Docket No. 41-1 ¶ 3.

9.     On October 12, 2021, Belesimo, through counsel, began delivering various devices to StoneTurn.  Docket No. 36 ¶ 5.

10.    On December 15, 2021, Belesimo gave CDMC an affidavit with an inventory of the data storage devices that are or have been in his possession, custody, or control.  Id. ¶ 15; see also Docket No. 36-9.

11.    Using date and potentially other parameters not approved by the order, individuals from Paradigm also made images of Callan's system which they provided to StoneTurn on December 2, 2021.  Docket Nos. 36 ¶¶ 9-10; 41 at 4.

12.    StoneTurn was ultimately provided with supervised access to Callan's network and has subsequently confirmed that the methods used to collect the images of Callan's system were the same as those it would have employed.  Docket Nos. 41 at 4; 52-1 at 2.

13.    Specifically, StoneTurn found that Paradigm used "forensically sound collection methodologies."  Docket No. 52-1 at 2.

14.    Throughout December 2021 the defendants also provided, in piecemeal fashion, additional data storage devices to StoneTurn.  Docket No. 32 ¶¶ 2-3.

15.    On January 7, 2022, Callan provided CDMC with an affidavit from Laura Protz of PW Technologies which contained an index of Callan's network and an inventory of the data storage devices in Callan's possession, custody, or control.  Docket No. 44 at 4.

III.     STANDARD OF REVIEW

A trial court has broad discretion in fashioning sanctions for failure to comply with court orders.  Goya Foods, Inc v. Wallack Mgmt. Co., 344 F.3d 16, 20 (1st Cir. 2003).  Independent of any statute or rule, the trial court has the power to sanction for contempt.  In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008).  Civil contempt must be established by clear and convincing evidence.  Gemco Latinoamerica v. Seiko Time Corp., 61 F.3d 94, 98 (1st Cir. 1995); see also In re Grand Jury Investigation, 545 F.3d at 25.  The moving party "'must show that (1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order.'"  Kologik, 2021 WL 2627799, at *3 (quoting Hawkins v. Dep't of Health and Human Servs. for State of N.H., Comm'r, 665 F.3d 25, 31 (1st Cir. 2012) (internal citation and quotation marks omitted)).

"'[G]ood faith is not a defense to civil contempt.'"  Kologik, 2021 WL 2627799, at *3 (quoting Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 76 (1st Cir. 2002)).  "First Circuit precedent, however, 'permits a finding of contempt to be averted where diligent efforts result in substantial compliance with the underlying order.'"  Kologik, 2021 WL 2627799, at *3 (quoting AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001) (additional citations omitted)).

A.     Contempt

Based on the certified facts, this Court finds that the order was not clear and unambiguous, and therefore the defendants did not violate the order.[2]

To determine whether an order is clear and unambiguous, "[t]he test is whether the

---

[2] It appears that the first and third elements required for a finding of contempt are satisfied.  The defendants certainly had notice of the October 1, 2021 order, which was jointly submitted by the parties for Judge Casper's review and approval.  Docket No. 16.  The defendants also do not argue that they lacked the ability to comply with the order.

putative contemnor is 'able to ascertain from the four corners of the order'" what behavior is required.  Goya, 290 F.3d at 76 (quoting Gilday v. Dubois, 124 F.3d 277, 282 (1st Cir. 1997) (citation omitted)).  "Focusing the test within the four corners of a document limits the inquiry to an examination of that document's text."  Goya, 290 F.3d at 76 (citing United States v. Anderson, 921 F.2d 335, 337–38 (1st Cir. 1990)).  "Thus, the 'clear and unambiguous' standard applies to the *language* of the relevant court order, not to its effectiveness."  Goya, 290 F.3d at 76 (alteration in original) (citing Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 13 (1st Cir. 1996)).  Any ambiguities in the order must be resolved in favor of the party against whom contempt is sought.  See United States v. Saccoccia, 433 F.3d 19, 28 (1st Cir. 2005) (citation omitted).

CDMC contends that the October 1, 2021 order required "direct access to Callan's systems by the independent examiner."  Docket No. 35 at 6, 15.  CDMC further argues that the order mandated that Callan permit "unfettered access" to its files and servers.  Docket No. 54 at 1.  Therefore, CDMC requests that the Court order the defendants to comply with paragraphs 2 and 3 of the order by forcing them to submit to a "direct search."  Docket No. 34 at 2.  The order itself, however, contains no such language.  Docket No. 17.  Rather, it states that the defendants "must submit" the items for examination by the independent forensic expert without any specifics as to the mechanisms for such inspection.  Id. at ¶ 2.

CDMC also asserts that the order obligates the defendants to produce user activity logs and network structure information.  Docket No. 44 at 4.  While the order does require that the defendants produce "a detailed report and notice" of the items that were "provided for inspection" to the plaintiff and the examiner, it says nothing about user activity logs or network structure information.  See Docket No. 17 ¶ 2.

In addition, CDMC appears to seek a contempt order because the defendants used third-party vendors to make forensic images of the devices at issue.  Docket No. 34 at 3; see also Docket No. 17 ¶ 3.  The defendants maintain that creating forensic images of data storage devices is the best practice in a situation such as here, where damage to the actual device could occur while in the hands of a third-party examiner.  Docket No. 41 at 3.  StoneTurn has represented that Paradigm used "forensically sound collection methodologies."  Docket No. 52-1 at 2.  Moreover, the order provides contradictory instructions on the matter.  On the one hand, it prohibits the defendants from "divulging or making accessible to anyone outside of CDMC the Trade Secrets."  Docket No. 17 ¶ 3.  On the other, it requires the production of information and devices to an outside third-party forensic examination expert.  Id. ¶ 2.

CDMC may well have thought that StoneTurn would collect the requested information.  The order, however, does not provide for that.  It is logical therefore that in order to comply, Callan would have needed to hire a third party.  In light of the above, ambiguity exists as to the specifics regarding the manner of review, the contents of the required report, and the directives regarding disclosure/copying.  These ambiguities must be resolved in favor of the defendants.

While the defendants were imperfect and late in their submissions to CDMC, they have endeavored to comply on an ongoing basis.  Considering the ambiguity in the order and the defendants' continuing efforts, CDMC has not shown by clear and convincing evidence that the defendants violated the order.  Accordingly, this Court finds that the facts certified above do not warrant a finding of contempt or further efforts by the Court in that regard.  I further recommend that no order issue compelling compliance or the award of sanctions.[3]

---

[3] There remain discovery disputes between the parties as outlined in their reports.  Docket Nos. 51, 60.  This Court will issue a separate opinion as to those issues.

IV.    RECOMMENDATION

For the foregoing reasons I recommend that Judge Casper adopt the factual findings as certified herein and deny CDMC's motion to hold defendants in contempt, for an order compelling compliance, and for sanctions.  I reserve decision on the outstanding discovery issues.

V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge